The Honorable Ronald B. Leighton

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| SHANNA OFFUTT EVANGER,<br><br>Plaintiff,<br><br>v.<br><br>GEORGIA-PACIFIC GYPSUM, LLC,<br><br>Defendant. | No. 3:17-cv-05521-RBL<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>NOTE ON MOTION CALENDAR: June 28, 2019<br><br>ORAL ARGUMENT REQUESTED |

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

**INTRODUCTION**

Plaintiff, Shanna Offutt Evanger, (a/k/a Shanna Offutt, hereinafter "Ms. Offutt") brings this dispositive motion because undisputed evidence shows that with respect to Plaintiff's claims, Defendant Georgia-Pacific Gypsum, LLC, (hereinafter "Georgia-Pacific") unlawfully discriminated against Ms. Offutt based on her marital status and sex, and wrongfully discharged Ms. Offutt without cause.[1] As to Defendant's affirmative defenses, the undisputed evidence shows that Ms. Offutt did not act, omit or conduct herself in any way to cause or contribute to the damages she suffered; and Ms. Offutt met her duty to mitigate damages.[2]

The Washington Law Against Discrimination (WLAD) is a broad remedial statutory scheme that prohibits an employer from discriminating against an employee based on her marital status. In the instant case, Defendant Georgia-Pacific flagrantly violated the WLAD by discharging Ms. Offutt within minutes of Ms. Offutt's disclosure that she was married. Without dispute, RCW 49.60.180. Georgia-Pacific had possessed knowledge, for months prior, that Ms. Offutt was interested in, and was pursuing a romantic relationship with a co-worker, the identity of the co-worker, and possible consequences of the romance that included a proposal of marriage, a natural outcome of any romantic relationship, all of which Ms. Offutt considered and communicated to Georgia-Pacific. Although approving the relationship in December 2016, corporate officials in Atlanta allowed the issue to linger for up to three to four months. Despite her value as an employee, in March, 2017, Georgia-Pacific selected her for discharge rather than her production-worker husband, Dennis Evanger.

---

[1] Documents cited as support for facts contained herein are attached to the Declaration of Judith A. Lonnquist, submitted herewith. The term "JL Dec." with a number there-following refers to Exhibits attached to the Lonnquist Declaration that substantiate cited facts.
[2] Dkt. #2, Defendant's Answer, Affirmative Defenses Nos. 4 and 5.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – 1
[3:17-cv-05521-RBL]

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

Numerous employees at other Georgia-Pacific facilities throughout the country, including at the Tacoma plant, have and continue to be involved in romances between employees.[3] Some of these relationships have blossomed into marriages, with both marital partners continuing their careers at Georgia-Pacific, and involved the career promotions to one or both partners. Ethics investigations into allegations of actual and potential conflicts involving spouses of employees and former employees have also taken place at the Tacoma plant without termination of the employees involved.

At issue in this case is Georgia-Pacific's schizophrenic treatment of Ms. Offutt as an employee, and its arbitrary selection of her as the employee to terminate. Georgia-Pacific's mischaracterization of Ms. Offutt's marriage disclosure as grounds for immediate discharge was wrongful and harkens back to a bygone era anachronistic in a modern workplace. Georgia-Pacific's actions have caused, and will continue to cause Ms. Offutt damages, personally and professionally. Based on the argument and evidence presented herein, this Court has everything needed to grant this Plaintiff's Motion for Summary Judgment on claims of discrimination and wrongful discharge, and proceed forthwith to trial on the sole question of the full extent and type of damages.

## STATEMENT OF UNCONTRAVERTED FACTS

I.     Ms. Offutt's Background

Ms. Offutt completed her bachelor's degree in accounting with GI bill assistance after an honorable discharge from the U.S. Air Force.[4]   By the year 2017, when Ms. Offutt was discharged from Georgia-Pacific, corporate records list her as having accrued the equivalent of

---

[3] Gosselin Dep. pp. 58-59; JL Dec. Ex. 14.
[4] Plaintiff's, Response to Defendant's Interrogatory. No. 10; JL Dec. Ex. 1.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – 2
[3:17-cv-05521-RBL]

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

12 years of service at the company.[5] Ms. Offutt began her civilian career in plant accounting at a Gypsum facility in West Memphis, Arkansas, which once acquired by Georgia-Pacific, resulted in Ms. Offutt's transfer to Controller position at the Tacoma plant, on track to assume the full responsibilities of the Plant Controller, which she did within three years.[6]

Ms. Offutt excelled in the Plant Controller position, received superior reviews, and last received a promotion to a salary of $80,000 on June 1, 2016.[7] Ms. Offutt exhibited strengths in fiduciary responsibilities and analytics, and helped onboard new employees at other plants.[8] On Sept. 23, 2016, her supervisor, Regional Controller Rob Voutila, emailed his supervisor Division Controller Kenneth Williams in Atlanta: "Just FYI – I think Shanna is quickly developing into a top-performing controller. She works really well with the Tacoma team and is starting to expand her influence…"[9] According to Georgia-Pacific's 2017 Building Products Controllers Talent Review Succession Plan Out, Ms. Offutt was a rising star, one of only three or four controllers nationwide who was predicted to rise to the level of one of three Regional Controllers within 3-6 years[10] from the pool of 50-55 plant controllers nationwide.[11] Internal documents obtained in discovery show that Ms. Offutt was one of the most consistently outstanding performers, well-liked and collaborative Controllers in the company. On Sept. 23, 2016, Jennifer Barron, Plant Controller at GP's facility in Fletcher, Oklahoma, emailed Mr. Voutila, Ms. Offutt's supervisor, praising Ms. Offutt's "communications approach with her team," and calling Ms. Offutt a "rockstar…for taking the time to help her sisters out."[12] One way Ms. Offutt received positive

---

[5] Def. Prod. Bates 1027; JL Dec. Ex. 7.
[6] Pl. Resp. to Def. Interr. No. 10, Voutila Dep. 32:22-33:4 JL Dec. Ex. 1, Ex. 4.
[7] Voutila Dep. Ex. 24; JL Dec. Ex. 6.
[8] Id.
[9] Def. Prod. Bates 2493-2494; JL Dec. Ex. 6.
[10] Def. Prod. Bates 1027; JL Dec. Ex. 7.
[11] Wells Dep. 191:5-9; JL Dec. Ex. 2.
[12] Def. Prod. Bates 1648; JL Dec. Ex 8.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 3 [3:17-cv-05521-RBL]

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

recognition for her "knowledgesharing (sic) and collaboration" was in the form of an "SBO," or situational behavior observation, a hallmark of "MGM," the market-based management philosophy adhered to by Koch Industries affiliated companies.[13] Ms. Offutt's supervisor's supervisor, Mr. Williams forwarded the email containing Ms. Offutt's "SBO" in the subject line to controllers around the country.[14]

Ms. Offutt's performance in her role was competitive with Georgia-Pacific's top talent nationwide, yet Ms. Offutt's compensation was well under the national average for the position, which carried an internal maximum of $105,000 and average of $89,000, making her pay under the 25th percentile nationwide for the role.[15] Defendant consistently noted on internal documentation that Ms. Offutt was markedly underpaid for the West Coast.[16] Within two months after her discharge, Ms. Offutt was replaced by a male candidate at an annual base salary of $100,000 (25% above hers),[17] and a relocation bonus of $37,000 to entice his relocation from Whidbey Island to Tacoma.[18] Internal emails requesting approval rights for the hire compare his 14 years' experience favorably over Ms. Offutt's 12 years to justify the higher offer and overstate Ms. Offutt's salary by 10% as $88,000.[19]

II.   Georgia-Pacific's "Code of Conduct"

During the period of Plaintiff's employment at Defendant Tacoma plant, Defendant issued a company handbook, the "2015 Code of Conduct," ("the Code") which directs employees that romantic relationships "should" be brought to a manager's attention.[20] Georgia-

---

[13] Voutila Dep. 25:12-21; JL Dec. Ex. 4.
[14] Def. Prod. Bates 2538; JL Dec. Ex. 9.
[15] Voutila Dep. Ex. 24; JL Dec. Ex. 5.
[16] Wells Dep. Ex. 23; JL Dec. Ex. 3.
[17] Voutila Dep. 215:3-15; JL Dec. Ex. 4.
[18] Wells Dep. Ex. 29; Def. Prod. Bates 1894; JL Dec. Ex. 10, Ex. 11.
[19] Wells Dep. Ex. 29; JL Dec. Ex. 10; Def. Prod. Bates 1027; JL Dec. Ex. 7.
[20] Wells Dep. 53:16-18; JL Dec. Ex 2.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – 4
[3:17-cv-05521-RBL]

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

Pacific also issued a Human Resources Toolkit, more detailed policy manual intended for human resources employees' reference (the "HR Toolkit").[21]

Pursuant to policy, an employee was not required to disclose a potential romantic, but rather "encouraged" by the Code using language of suggestion, rather than language of mandatory requirement, or positive command, regarding disclosure of workplace relationships.[22] The language employs permissive term ("may" or "encouraged") rather than a directive ("shall") or mandatory obligation ("must") with regard to romantic relationships.[23] There was no documented anti-fraternization policy in the Code. Numerous persons at this Georgia-Pacific facility dated and pursued relationships openly.[24] Other relationships flew under the radar for many years, and were neither reported nor investigated. For example, Mr. Evanger and Jill Munro, who is an exempt supervisory-level employee, had lived together for five years in a cohabitation arrangement that was neither reported nor investigated.[25]

III.    A Romantic Relationship Is Allowed to Develop and Continue

In October 2016, after a long and close friendship with Dennis Evanger, Ms. Offutt voluntarily disclosed to her supervisor, Rob Voutila, that she was interested in pursuing a relationship with Evanger.[26] Such behavior is consistent with Ms. Offutt's character as disclosed in voluntary performance self-assessments, e.g. writing "[w]hen I am uncertain about something

---

[21] Wells Dep. Ex. 1; JL Dec. Ex. 12.
[22] Wells Dep. Ex. 2, Wells Dep. 59:7-61:11, Gosselin Dep. 48:4-11; JL Dec. Ex. 13, Ex. 2, Ex. 14.
[23] The applicable Code of Conduct expresses policy through Question and Answer format. Wells Dep. Ex. 2, JL Dec. Ex. 13, p. 37. It says: Q: "Does the Code prohibit me from having a romantic relationship with a coworker?" A; "The Code is not designed to cover private matters between employees. However, romantic relationships with others in the workplace can create situations that may be prohibited by the Code. For instance, employees who supervise one another, coworkers who work closely together or who could influence each other's pay, performance rating, job benefits or other terms and conditions of employment must avoid even the appearance of conflict of interest. If you find yourself in a situation that may lead to a potential or actual conflict of interest due to a romantic relationship with a coworker, you are encouraged to bring the matter to your supervisor's attention or to the attention of human resources."
[24] Gosselin Dep. 55:10-59:13; JL Dec. Ex. 14.
[25] Gosselin Dep.159:4-160:25; JL Dec. Ex. 14.
[26] Voutila Dep. 71:15-22; Gosselin Dep. 63:16-17; JL Dec. Ex. 4, Ex. 14.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – 5
[3:17-cv-05521-RBL]

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

or have concerns, I am not afraid to elevate the situation up the chain."[27] Voutila advised her to let the Plant Manager and the Plant Human Resources Manager ("the Plant Team") know of her plans.[28] On December 8, 2016, the plant team concluded, based on a consideration of the potential challenges and mitigation strategies that "from a local standpoint… that this relationship, while not ideal, can be managed."[29] In coming to its conclusion forming this recommendation, the local management team cited that Ms. Offutt was a valuable member of the Tacoma team, trustworthy, honest and a rule follower.[30] Moreover, Ms. Offutt was praised for being proactive in thinking through the potential risks and how to mitigate them.[31]

Ms. Offutt had produced and sent a Potential Risks and Mitigation document to her supervisor Regional Controller Rob Voutila at the instigation of Tacoma Plant HR Manager Mollie Gosselin.[32] Ms. Offutt also had submitted this document to her HR Manager Ms. Gosselin including marriage as possible scenario.[33] In deposition, Senior Human Resources Manager Cherie Wells conceded that some romantic relationships lead to marriage.[34]

Corporate directors in Atlanta discussed potentially putting mitigating procedures in place.[35] Two recommendations "came back from the plant," apparently from the Potential Risks and Mitigation document Ms. Offutt had put together.[36] Ms. Wells did not recall when she went over the document, but stated that in her experience, it was unusual and the only time in her

---

[27] Def. Prod. Bates 44; JL Dec. Ex. 15.
[28] Voutila Dep. 73:9-74:9; JL Dec. Ex. 4.
[29] Gosselin Dep. Ex 9; JL Dec. Ex. 17.
[30] Gosselin Dep. Ex 9; JL Dec. Ex. 17. .
[31] Gosselin Dep. Ex 9; JL Dec. Ex. 17..
[32] Gosselin Dep. 67:10-14, JL Dec. Ex. 14.
[33] Wells Dep. 182:22-183:6; JL Dec. Ex. 2.
[34] Wells Dep. 167:7-9; JL Dec. Ex. 2.
[35] Williams Dep. 63:5-8; JL Dec. Ex.18.
[36] Williams Dep. 63:17-20; Voutila Dep. Ex. 11; Gosselin Dep. Ex. 10; JL Dec. Ex. 18, Ex. 4, Ex. 14.

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

experience an employee had taken the initiative to prepare a plan on her own for discussion with her supervisors.[37]

The recommendations involved removing Ms. Offutt from payroll, where she served only on rare occasions as backup,[38] and for Mr. Voutila to take on more oversight of the financial controls. Mr. Voutila's supervisor, Mr. Williams, "felt comfortable" with this arrangement after having a "conversation" with Mr. Voutila and reaching agreement that they "could potentially try to make that work."[39] On the morning of Dec. 13, 2016, Ms. Wells wrote Thomas Anderson, "I didn't realize there was already a POV?[40] I'll follow up with Rob. I want to make sure Ann Johnson has weighed in on this."[41] By that afternoon, Ms. Johnson wrote Mr. Voutila and Mr. Williams: "Hi guys, have we closed the loop on this one?"[42] According to Mr. Williams' recollection, he states: "I do recall us having the discussion and were initially comfortable with the proposal that the plant had made. And then after that Rob and I had discussions with Ann [Johnson] and Cherie Wells on those proposals."[43] On Dec. 14, 2016, Mr. Voutila emailed Ann Johnson and Mr. Williams stating that Mollie Gosselin was going to work with Human Resources Divisional Director Thomas Anderson in Atlanta on getting an enhanced CDA (confidentiality disclosure agreement) in place and documenting expectations going forward.[44] Mr. Voutila, confirming the group consensus, wrote Mr. Williams and Ms. Johnson: "I followed up with Thomas [Anderson] after Mollie [Gosselin] and I talked last week and determined that

---

[37] Wells Dep. 182:13-17; JL Dec. Ex. 2.
[38] Gosselin Dep. 29:16-22; Wells Dep.102:22-23; JL Dec. Ex. 14, Ex. 2.
[39] Williams Dep. 64:15-20; JL Dec. Ex. 18.
[40] A "POV" is a Georgia-Pacific acronym for developing a single group opinion on a topic, such as the one formed by Rob Voutila and Kenneth Williams that they were comfortable allowing the Offutt/Evanger relationship to move forward. Voutila Dep. Ex. 13; JL Dec. Ex. 26.
[41] Wells Dep. Ex. 5; JL Dec. Ex. 22.
[42] Johnson Dep. Ex. 9; Williams Dep. Ex. 9; JL Dec. Ex. 23, Ex. 24.
[43] Williams Dep. 88:4-8, 88:25-90:12; JL Dec. Ex. 18.
[44] Voutila Dep. Ex. 12; JL Dec. Ex. 25.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – 7
[3:17-cv-05521-RBL]

the plant team (HR and Plant Mgr) wanted to move forward with a mitigation strategy and allow the relationship to progress. He wanted to make sure Cherie [Wells] was up to speed with the decision the plant team made."[45] Mr. Voutila confirmed this account in his deposition. [46] The email invited the parties to have a phone call for clarification if necessary: "Do we need to have a quick call to discuss?"[47] Mr. Voutila, Mr. Williams, Ms. Johnson, Ms. Wells and Mr. Anderson all have offices at corporate headquarters in Atlanta. On Dec. 14, 2016, Kenneth Williams wrote Rob Voutila and Ann Johnson: "Rob and I discussed last Thursday, and we are comfortable with moving forward."[48]

Thus, as of mid-December, the Offutt-Evanger relationship was considered acceptable to Offutt's supervisor, Regional Controller Rob Voutila in Atlanta, Mr. Voutila's supervisor, Division Controller Kenneth Williams, also in Atlanta, and the local Plant management team in Tacoma consisting of Plant Manager Kirk Hargett and HR Manager Mollie Gosselin.[49] Ms. Offutt became aware of the growing consensus through a series of supportive conversations both in person and over the phone, and was praised repeatedly for her integrity in bringing it forward.[50] This "gave her hope" and made her very happy.[51] Ms. Offutt was advised that there was no clear prohibition against a relationship; there were merely perception issues that needed to be addressed.[52] Ms. Offutt reasonably concluded that she could pursue the relationship.[53]

---

[45] Id.; JL Dec. Ex. 25.
[46] Williams Dep. 86:17 - 87:5; JL Dec. Ex. 18.
[47] Voutila Dep. Ex. 12; JL Dec. Ex. 25.
[48] Williams Dep. Ex. 9; Voutila Dep. Ex. 12; Wells Dep. Ex. 6; JL Dec. Ex. 24, Ex. 25, Ex. 27.
[49] Wells Dep. 185:9-19; JL Dec. Ex. 2.
[50] Gosselin Dep. 65:24-66:25; JL Dec. Ex. 14.
[51] Gosselin Dep. 63:14-23; JL Dec. Ex. 14..
[52] Gosselin Dep. 67:2-6; JL Dec. Ex. 14..
[53] Between mid-December and March 8, no one told Ms. Offutt that her relationship could not be pursued. Gosselin Dep. 79:19-25; JL Dec. Ex. 14.

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

1    Having been given the green light, the couple considered the courtship phase over, and

2    wanted to formalize their relationship. Ms. Offutt and Mr. Evanger married at a private civil

3    ceremony late afternoon on Fri., Dec. 16, 2016, in Snohomish County as they made their way

4    north for a quiet weekend in the San Juan Islands and celebrated their nuptials.

5        Ms. Offutt was never told that the individuals above did not have the ultimate authority to

6    approve her relationship ("decision rights").[54] After communicating with the Tacoma personnel

7    that the relationship would be managed locally, corporate officials in Atlanta allowed the matter

8    to "linger" until February 2017, without advising Plaintiff or her local management.[55] On

9    February 14, 2017, Ms. Wells apparently re-opened the discussion and emailed Mr. Williams

10   and Ms. Johnson:[56] "Were we able to define what Shanna is working on and what she won't be

11   able to do if she is in this relationship? If so, I'd like to have that in writing so we can share with

12   everyone and be on the same page."[57] Ms. Wells deferred to Thomas Anderson on the "ops

13   employee," Mr. Evanger, but Mr. Anderson never ultimately spoke to Mr. Evanger nor was he

14   ever asked to do so.[58]

15       By February 28, the viewpoint ("POV") in Atlanta had changed, and Mr. Voutila

16   informed only Ms. Gosselin that he planned to fly to Tacoma the following week for an

17   unannounced meeting with Ms. Offutt.[59] Neither Ms. Gosselin nor anyone else in Washington

18   knew of this change in Atlanta's POV before that time.[60] The purpose of the visit was to present

19   Ms. Offutt with three humiliating options: (1) leave her executive level position for another

---

[54] Wells Dep. 186:12-25, Williams Dep. 90:18-21, 91:11-92:1, 95:21-96:5; JL Dec. Ex. 2, Ex. 18.
[55] Wells Dep. Ex. 8; Wells Dep. 95:1-22; Gosselin Dep. 103:13-24; JL Dec. Ex. 28, Ex. 2, Ex. 14.
[56] Ms. Johnson is VP Controller for the Building Products Business Segment. Johnson Dep. 7:5-11 JL Dec. Ex. 29.
[57] Wells Dep. Ex. 9; JL Dec. Ex. 30.
[58] Anderson Dep. 103:14-104:-22; JL Dec. Ex. 31.
[59] Voutila Dep. Ex. 19; JL Dec. Ex. 32.
[60] Gosselin Dep. 108:20-24; JL Dec. Ex. 14.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – 9
[3:17-cv-05521-RBL]

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

position in the company,[61] (2) find a position at another facility despite Ms. Offutt's documented status in personnel records as "not currently mobile,"[62] or (3) voluntarily leave the company within 30 days ("the 3-options discussion").[63] One of the options at the time included "[e]nding the relationship (drives another set of actions),"[64] however in later iterations of the 3-options, including a follow up email from Mr. Williams less than an hour later, this "option" was removed with the following language added: "seems like I remember we shouldn't discuss this as an option.[65] The draft also contained the language "one of them would need to separate from the company," but Mr. Evanger was never approached with that option.[66]

Month-end closing was an important priority that required Ms. Offutt's participation, so Defendant postponed the 3-options discussion to the after the end of the month.[67] When Ms. Offutt stated that none of the options would work for her, due to the fact she was married, HR Director Cherie Wells responded immediately that she was terminated. As an afterthought, Ms. Wells added that they would "check with Legal."[68]  Ms. Offutt was advised the next day that her termination had been processed.[69]

IV.    Separate Departments and Separate Chain of Command

Where there are potential or actual conflicts, as opposed to perceptions of a conflict, or conflicts that go unreported escaping detection altogether, Georgia-Pacific possessed within its HR toolkit arsenal several templates for mitigating potential conflicts, the only class of conflicts

---

[61] No position was presented except the possibility floated that she could work on the floor in an operations position not requiring a college degree, although positions were available elsewhere. Williams Dep. 170:11-171:19; JL Dec. Ex. 18. There were no vacancies at the Tacoma plant. Gosselin Dep. 124:2-5; JL Dec. Ex. 14.
[62] Voutila Ex. 24; JL Dec. Ex. 44.
[63] Voutila Dep. Ex. 18; JL Dec. Ex. 34.
[64] Wells Dep. Ex. 13; JL Dec. Ex. 35.
[65] Wells Dep. Ex. 14; JL Dec. Ex. 36.
[66] Anderson Dep. 103:14-104:22; JL Dec. Ex. 31.
[67] Voutila Dep. Ex. 18; Wells Dep. Ex. 14, Ex. 16; JL Dec. Ex. 34, Ex. 36, Ex. 37.
[68] Wells Dep. 161:2-162:18; JL Dec. Ex. 2.
[69] Wells Dep. 175:9-17; JL Dec. Ex. 2.

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

which could be mitigated, with the following: confidentiality agreements, enhanced confidentiality agreement and segregation of duties agreements for use by its human resources department.[70] Georgia-Pacific regularly employs its so-called "enhanced" confidentiality agreements as circumstances require.[71] Moreover, all employees, including Ms. Offutt, sign a confidentiality agreement as a condition of employment, including all controllers.[72] The agreement covers any information employees come into contact with while working at Georgia-Pacific, covers proprietary information, confidential information, and in the case of an accountant, sensitive information around numbers and profitability, and remains in effect even after an employee leaves the company.[73]

None of the examples provided in Defendant's Code of Conduct apply to the Offutt/Evanger relationship.[74] Ms. Offutt did not supervise or work closely together with Mr. Evanger.[75] Ms. Offutt reported directly to Regional Controller Robert Voutila in Atlanta.[76] Ms. Offutt could not influence Mr. Evanger's pay or working conditions on the manufacturing floor dictated by the collective bargaining agreement between the Teamsters Union and Georgia-Pacific.[77]

V.   The Aftermath: Covering Tracks, State Finding, and Mitigation Success

On the afternoon of Ms. Offutt's discharge, Ms. Wells emailed Mr. Voutila that "some how (sic) we need to add that the immediate termination is a result of her failure to adequately cooperate in the review of the code of conduct – conflict of interest issue when she failed to be

---

[70] Wells Dep. 39:22-41:7; JL Dec. Ex. 2.
[71] Wells Dep. 40:19-40:20; JL Dec. Ex. 2.
[72] Wells Dep. 41:10-15; JL Dec. Ex. 2.
[73] Wells Dep. 42:3-12, 42:19-20; JL Dec. Ex. 2.
[74] See Wells Dep. Ex. 2, p. 37; JL Dec. Ex. 13.
[75] Wells Dep. 59:22-61:1; JL Dec. Ex. 2.
[76] Def. Prod. Bates 2254; JL Dec. Ex. 38.
[77] Gosselin Dep. 47:6-20, 26:16-27:6, JL Dec. Ex. 14.

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

completely forthcoming??????"[78] In response, Mr. Voutila approved "using that exact wording."[79] The following day, Kenneth Williams sent an email confirming: "[W]e are terminating our Tacoma controller due to a code of conflict violation."[80]

On April 11, 2017, the Employment Security Department of Washington State wrote Ms. Offutt the following letter: "We approved your unemployment benefits starting Mar 12 2017, as long as you are otherwise eligible for benefits. You or your employer, Georgia-Pacific Gypsum, reported that you were fired. We found that your actions were not misconduct."[81] No appeal was apparently taken from this decision.[82]

After a diligent search, Ms. Offutt acquired another job within a month.[83]

## LEGAL STANDARD AND ARGUMENT

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). Where, as here, the case turns on a mixed question of fact and law and the only disputes relate to the legal significance of undisputed facts, the controversy is a question of law suitable for disposition on summary judgment. *Thrifty Oil Co. v. Bank of America Nat. Trust and Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir.2003). Of course, a requirement that there be no "genuine issue as to any material fact" does not mean that summary judgment is inappropriate if there is some dispute as to *any* fact. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

---

[78] Voutila Dep. Ex. 21; JL Dec. Ex. 39.
[79] Id.; JL Dec. Ex. 39.
[80] Williams Dep. Ex. 16; JL Dec. Ex. 40.
[81] Def. Prod. Bates 2514-2516; JL Dec. Ex. 41.
[82] Def. Prod. Bates 2512-2513; JL Dec. Ex. 42.
[83] Plaintiff's Response to Defendant's Req. for Prod. No. 18; Bates No. SOE 00148-49; JL Dec. Ex. 43.

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

1   motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

2   (emphasis added). Instead, "the requirement is that there be no ***genuine*** issue of ***material*** fact."

3   *Id*. To be "material," a dispute must be substantive enough to "affect the outcome of the suit

4   under the governing law." *Id*. at 248. "[I]rrelevant or unnecessary" disputes do not prevent

5   granting the motion, *id*., and "[a] party cannot manufacture a genuine issue of material fact

6   merely by making assertions in its legal memoranda," *S.A. Empresa v. Walter Kidde & Co.*, 690

7   F.2d. 1235, 1238 (9th Cir. 1982). Here, where there is no genuine issue as to any material fact,

8

9   pursuant to Federal Rule of Civil Procedure 56(a), Ms. Offutt is entitled to judgment as a matter

10  of law.

11      **I.    Georgia-Pacific's discharge of Ms. Offutt due to marriage constituted
12             discrimination in violation of Ms. Offutt's marital status under RCW §49.60.180.**

13      "Washington law prohibits discharge based on an employee's...marital status." *Kastanis*

14  *v. Educ. Employees Credit Union*, 122 Wn.2d 483, 500, 859 P.2d 26, 35, modified, 865 P.2d 507

15  (1993) citing RCW 49.60.180(2); *Roberts v. ARCO*, 88 Wn.2d 887, 891 n. 1, 568 P.2d 764

16  (1977). Enacted as part of the broad remedial statutory frameworkthe Washington Law Against

17  Discrimination (WLAD) contains a sweeping policy statement strongly condemning

18  discrimination in many forms and provides that its provisions "shall be is construed liberally for

19  the accomplishment of the purposes thereof." RCW 49.60.020. The exceptions to the rule that

20  an employer may not discriminate on the basis of marital status are narrow. See WAC 162-16-

21  250(2).[84] "The commission believes that the...exception should be applied narrowly." See WAC

22  162-16-240.

23

24

25

26  [84] WAC 162-16-250(2)(a)-(b) allow narrow exceptions if a bona fide occupational qualification applies or an
employer is enforcing a documented conflict of interest policy limiting employment opportunities on the basis of
marital status where certain criteria are met.

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

It is in the spirit of Washington's strong well-established policy and condemnation of discrimination that Ms. Offutt's involuntary dismissal should be examined. "If the employer fulfills his or her burden of production by showing a nondiscriminatory reason for termination, the plaintiff must in turn show that the employer's articulated reasons are a mere pretext for a discriminatory purpose." *Kastanis*, 122 Wn.2d 483, 491 (1993). Once these factors are established, the defendant must show, by a preponderance of the evidence, that the same decision would have been reached absent the discriminatory factor. *Kastanis*, 491 (citing *Buckley v. Hospital Corp. of Am., Inc.*, 758 F.2d 1525, 1529 (11th Cir.1985)).

Ms. Offutt was a productive and well-respected employee who, out of an abundance of caution and desire to be transparent, notified her supervisor of her interest in pursuing the relationship. Nearly three months passed before Georgia-Pacific revoked its earlier approval and decided that Ms. Offutt's relationship jeopardized her job.[85] Ms. Offutt's personnel file with Defendant is well-documented, crediting her 11 years exemplary service to Georgia-Pacific and meteoric career rise since the company moved her across the country to Tacoma; her work history contains nothing to warrant the immediate discharge.

Under Washington law, "the 'substantial factor' standard is the proper one in a discrimination case brought under RCW 49.60.180." *MacKay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 898 P.2d 284 (1995). [86] Based on the undisputed evidence, Defendant Georgia-Pacific considered Ms. Offutt's marital status a substantial factor justifying her discharge.

---

[85] Local HR Director testified that the "first indication that corporate had changed its mind was only about a week before Mr. Voutila came to Tacoma to present "options" to Ms. Offutt (Gosselin Dep. 110:2-6). Gosselin was "very surprised" because "we were on course that everything was ok." Gosselin Dep.111:14-18: JL Dec. Ex. 14.

[86] The *MacKay* court explained its rationale as follows: "Washington's disdain for discrimination would be reduced to mere rhetoric if this court were to require proof that one of the attributes enumerated in RCW 49.60.180(2) was a 'determining factor' in the employer's adverse employment decision. This court will not render its own words, and those of the Legislature, hollow. Accordingly, we decline to adopt the 'determining factor' standard in a case Instead, we hold that in order to prevail on such a claim a plaintiff must prove that an attribute listed in RCW 49.60.180(2) was a 'substantial factor' in an employer's adverse employment decision." *MacKay*, at 284.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – 14
[3:17-cv-05521-RBL]

Georgia-Pacific's management team substantially agrees with Ms. Offutt's description of events. Defendant has failed to present evidence of legitimate non-discriminatory factors justifying discharge, thus Plaintiff has satisfied the first prong of the *Kastanis* two-factor test.

Under the second prong, Plaintiff argues that discrimination was not justified or excused by "business necessity," or "bona fide occupational qualification" ("BFOQ"), which Defendant and the *Kastanis* court treated as the same. A business necessity defense includes those circumstances where an employer's actions are based upon a compelling and essential need to avoid business-related conflicts of interest, *Kastanis*, at 488-89:

> (i)      [w]here one spouse would have the authority or practical power to supervise...remove, or discipline the other;
> (ii)      [w]here one spouse would be responsible for auditing the work of the other;
> (iii)      [w]here other circumstances exist which would place the spouses in a situation of actual or reasonably foreseeable conflict between the employer's interest and their own;
> (iv)      "to avoid the reality or appearance of improper influence or favor, or to protect its confidentiality, the employer must limit the employment of close relatives of policy level officers of customers,...or others with whom the employer deals." WAC 162-16-250.

None of these factors is extant in this case.

In *Kastanis*, a bank CEO and teller began dating openly in full compliance with the relevant provisions of the corporate anti-nepotism policy. When the couple announced they were to be married, the board of directors voted to terminate the female spouse who brought suit and prevailed on claim of marital status discrimination. Like the plaintiff in *Kastanis*, Ms. Offutt, announced she would pursue a relationship openly and in full compliance with relevant policies. Arguably, Ms. Offutt should have been in a safer position than the plaintiff in <u>*Kastanis*</u>, since far from being CEO or in any position with authority or practical supervisory power over Ms. Offutt, Mr. Evanger works in an entirely separate department. Under Washington law, an

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – 15
[3:17-cv-05521-RBL]

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

essential function in a job duty is one fundamental, basic, necessary and indispensable and does not include a marginal duty divorced from the essence or substance of the job.[87] Ms. Offutt did not have any authority or practical power to supervise, remove, or discipline Mr. Evanger, an operations employee. Ms. Offutt did not audit Mr. Evanger's work. As Ms. Gosselin and Ms. Wells's testified, payroll was an HR function and had to be certified by a manager.[88]

Through her conversations with her local and corporate managers, Ms. Offutt was led to believe her relationship would be manageable, especially if some combination of enhanced CDA and mitigation plan would be put into place.[89] No one from Georgia-Pacific reached out to Ms. Offutt from the December approval until March, when Mr. Voutila delivered Georgia-Pacific's changed position and ultimatum. Georgia-Pacific had no specific documented policy stating that operations plant employees and members of Controller Group could not fraternize, date or be friends. Moreover, the position that the couples' roles were in actual or reasonably foreseeable conflict or precluded by need to avoid improper influence, favor or confidentiality is specious where all employees were already required to sign a confidentiality agreement. In their depositions, corporate officials claimed concern that Ms. Offutt might disclose confidential information useful to the union in collective bargaining.[90]   Defendant's claims are frivolous given that Georgia-Pacific is legally obligated to turn over any information including all financial information, the union requested pursuant to its collective bargaining obligations.[91]

---

[87] 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 330.37 (6th Ed.); *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 533 (Wash. 1993) (quoting 29 C.F.R. 630.2(n)(1) (emphasis in original) (where the central claim was brought under the ADA).
[88] Gosselin Dep. 29:16-22; Wells Dep. 102:18-103:3; JL Dec. Ex. 14, Ex. 2.
[89] No corporate official followed up with Ms. Gosselin to create an enhanced CDA. Gosselin Dep. 93:24-95:23;. JL Dec. Ex. 14.
[90] Gosselin Dep. 90:7-92:14, 60:19-61:19, 172:15-173:6; JL Dec. Ex. 14..
[91] 29 USC Section 151 *et. seq.* – duty to provide information requested by union: *NLRB v. Acme Industrial Corp.*, 385 U.S. 432, 87 S.Ct. 565 (1967); *NLRB v. Realty Maintenance Inc.*, 723 F.2d 746 (9th Cir. 1984). *See also:* Gosselin Dep. 90:7-10; JL Dec. Ex. 14.

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

In *Kastanis*, the defendant employer, appealed a lower court refusal to give a "reasonably necessary" instruction. Writing for an undivided court,[92] Justice Madsen reaffirmed that actions brought under WLAD required the more exacting "compelling and essential need standard." *Id.*, at 29. Georgia-Pacific has not presented evidence that Ms. Offutt's discharge was compelled by essential need. Accordingly, Georgia-Pacific should not expect to escape liability through the business necessity defense that the legislature through its implementing regulations intended to be narrowly construed.[93]

Based on facts averred in the undisputed record, where Georgia-Pacific directly attributed Ms. Offutt's discharge to her marriage, and can make no credible showing of 'compelling and essential' need required under Washington law, there are no disputed genuine issues of material fact in dispute. As such, this Court should grant summary judgment for Plaintiff on her marital status discrimination claim.

**II. Georgia-Pacific's decisions to discharge Ms. Offutt, the woman, rather than Mr. Evanger, the man, and to replace Ms. Offutt with a man at substantially higher pay, each separately constitute sex discrimination in violation of RCW § 49.60.180.**

In the discharge context, the prima facie case of sex discrimination is generally established by evidence that: (1) the plaintiff is a woman, (2) she was discharged, (3) she was performing satisfactorily, and (4) the employer replaced the plaintiff with a man. *Kastanis, supra* at 490. This creates an inference of discrimination which the employer may then rebut by articulating a plausible nondiscriminatory explanation. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 254-55 (1981); *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 70, 821 P.2d 18 (1991). "If the defendant fails to meet this production burden, the plaintiff is

---

[92] Six justices signed on to Justice Madsen's opinion. The Chief concurred only in the result. One justice did not participate in the disposition.
[93] "The commission believes that the…exception should be applied narrowly." See WAC 162-16-240.

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

entitled to an order establishing liability as a matter of law" *Kastanis*, 122 Wn.2d at 490, "because no issue of fact remains in the case." *Burdine*, 450 U.S. at 254. Washington courts have largely adopted federal protocol announced in *McDonnell Douglas*[94] for evaluating discrimination claims cases brought under state law. See, e.g. *Kastanis*. However, in Washington such federal employment law rulings represent only "a source of guidance, we bear in mind that they are not binding and that we are free to adopt those theories and rationale which best further the purposes and mandates of our state statute." *Hill v. BCTI Income Fund I*, 144 Wn.2d 172, 180 citing *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 361-62, 753 P.2d 517 (1988).

As shown by the facts, Defendant discharged Ms. Offutt, and replaced her with a male candidate, offering the male candidate a starting salary 25% higher than Ms. Offutt's last recorded annual salary after 12 years with the company. Ms. Offutt's last reported salary was $80,000; her replacement was offered $100,000 to begin, plus an additional one-time $37,000 moving incentive,[95] without considering any additional compensation in the form of bonuses he likely received as a part of Georgia-Pacific's "PPay" or performance pay incentive program.[96] The record shows Ms. Offutt's performance was outstanding and regularly meeting or exceeding performance expectations.

Georgia-Pacific's internal personnel files demonstrate knowledge of how shockingly undercompensated Ms. Offutt was compared to others in her profession geographic location and

---

[94] *McDonnell Douglas v. Green*, 411 U.S. 792, 801, 93 S. Ct. 1817 (1973).
[95] Put another way, Plaintiff earned 61.8% of her male replacement's first year salary measuring Plaintiff's fiinal year salary from March 2016 to March 2017, considering her raise from 75,000 to 80,000 in June 2016, and calculating a weighted average over Plaintiff's last 12 months plus a $6,000 bonus compared to the male replacement candidate's $137,000 offer in the first year for a percentage difference of 61.8% (0.618 = 84,720/137,000). It is unknown whether the male candidate received a bonus during his first year.
[96] Wells Dep. 170:5-12; JL Dec. Ex. 2.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – 18
[3:17-cv-05521-RBL]

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

role[97] while being groomed to take on greater responsibilities as soon as December 2019.[98] Since Ms. Offutt, a female, was discharged, while her male spouse, Mr. Evanger, was not even approached, Defendant engaged in sex discrimination in violation of WLAD. By hiring a male to replace Ms. Offutt at a base salary 25% greater than her highest salary and a premium of 61% higher in the first year, GP exacerbated its sex discriminatory conduct.

Under Washington law, a plaintiff only has to show that gender was a substantial factor not the compelling reason for the decision to terminate her employment. *Mackay v. Acorn Custom Cabinetry*, 127 Wn.2d 302, 309, 898 P.2d 284 (1995). As the above facts persuasively illustrate, Ms. Offutt suffered discrimination on the basis of her sex where no other factor can conceivably explain such a wide gap in pay or Georgia-Pacific's choice to terminate a wife rather than a husband.

Accordingly, with no genuine issues of material fact at issue, summary judgment should be granted for the Plaintiff on her sex discrimination claim.

**III.    Georgia-Pacific's discharge of Ms. Offutt in immediate response to her declaration that she was married was wrongful and retaliatory in violation of RCW § 49.60.210.**

An employee may invoke the anti-retaliation provision of the WLAD if she opposes a practice forbidden by the WLAD. *See* RCW § 49.60.210. It is sufficient that the employee has an objectively reasonable belief that the practice in question violates the WLAD. *Lodis v. Corbis Holdings, Inc.* 172 Wn. App. 835, 852, 292 P.3d 779 (Div. I, 2013). The elements of a claim for retaliation consist of proof that the plaintiff opposed what she reasonably believed to be discrimination against a protected class, or provided information to or participated in a

---

[97]"External market data indicates that Shanna is under the 25th percentile for the Plant Controller role. This is based on the external role title of "Plant Accounting Manager, Plant Controller, and Financial Analyst I." Internal max for the role is $105K and average is 89K." Voutila Dep. Ex. 24; JL Dec. Ex. 33.
[98] Def Prod. Bates 1027; JL Dec. Ex. 45.

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

proceeding to determine whether such discrimination occurred, and that such activity was a substantial factor in the adverse action. *See* Washington Pattern Jury Instructions – Civil 6th WPI 330.05.

Here, Ms. Offutt invoked the anti-retaliatory provision of WLAD where her discharge was explicitly attributed to her declaration and disclosure of her change in marital status. As provided by the WLAD, as a married person, Ms. Offutt is a member of a statutorily protected class. Her employer's response to that pronouncement was immediately to fire her. Prior to the final meeting, option three presented to Ms. Offutt was thirty days' severance pay. However, once Ms. Offutt disclosed she was married, that option was withdrawn. Therefore, the only reasonable conclusion is that Ms. Offutt was discharged because she was married, in violation of her protected class status, which is wrongful and retaliatory.

Because Ms. Offutt possesses objectively reasonable belief that her dismissal was so close in time to her announcement of marriage, and nothing in her performance indicated any other explanation for her automatic discharge, this Court reasonably can conclude that her discharge was wrongful, in retaliation to the exercise of a legal right and her membership in the protected class of married persons under the WLAD. Since there exists no genuine dispute of material fact as to the events, summary judgment for Ms. Offutt's should be entered on her claim of retaliatory discharge.

**IV.   Plaintiff Is Entitled to Summary Dismissal of Defendant's Affirmative Defenses**

    **A. Finding by Washington State Employment Security Department that Ms. Offutt's actions were not misconduct precludes Georgia-Pacific's affirmative defense No. 4.**

Defendant's affirmative defense attributing Ms. Offutt's damages to her own "acts, omissions and/or misconduct" is contradicted by the investigation and finding of the Washington

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

Employment Security Department. Under Washington law, to qualify for unemployment benefits, the claimant must have become unemployed "through no fault of their own" for a non-disqualifying reason from all last employers in covered employment in the base year. *Macey v. Emp't Sec.* Dep't, 110 Wn.2d 308, 316, 752 P.2d 376, 372-377 (1988).

Here, Ms. Offutt was notified by the Employment Security Department (ESD) not only that she qualified, but the reasons supplied directly contradict Georgia-Pacific's account of events. Moreover, Georgia-Pacific took no appeal. In pertinent parts, the ESD wrote:

> "You or your employer, GEORGIA-PACIFIC GYPSUM, reported that you were fired. We found that your actions were not misconduct. The laws that apply are RCW 50.20.066, RCW 50.04.294, WAC 192-150-200 and WAC 192-150-205."[99]

Applicable statutes for alleged misconduct are as cited by ESD, with RCW § 50.04.294(1) providing the definition of misconduct in relevant part: violation of reasonable company rules. Misconduct cannot be inferred or presumed. *In re Hawkins*, Empl. Sec. Comm'r Dec.2d 465 (1978). The employer has the burden to prove misconduct by the preponderance of the evidence. *S. Yamamoto v. Puget Sound Lumber Co*., 84 Wash. 411, 417, 146 P. 861, 863 (1915). One statutory defense to misconduct is good faith errors in judgment or discretion. RCW § 50.04.294

Here, this accusation cut to the heart of Ms. Offutt's personal code of ethics and professional identity. Ms. Offutt's reputation for integrity has been the key to her success in finance and accounting roles. Ms. Offutt conducted herself honestly at all times. The ESD's conclusion of "no misconduct" also supports arguments made above that Georgia-Pacific's actions constitute invidious violation of WLAD and were retaliatory.

---

[99] Def. Prod. Bates 2514-2516; JL Dec. Ex. 46.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – 21
[3:17-cv-05521-RBL]

1    Where no evidence shows a genuine dispute of material fact to support a conclusion that

2    Ms. Offutt's damages were caused or contributed to by Plaintiff's own acts, omissions or

3    misconduct, Affirmative Defense No. 4 in Defendant's Answer should be summarily dismissed.

4

5    **B.    By Accepting a Favorable Offer within a Month of Her Discharge, and Remaining Employed Since, Ms. Offutt Substantially Fulfilled her Duty to Mitigate Damages and Affirmative Defense No. 5 Should Be Dismissed**

6

7    Under Washington law, a terminated employee has an obligation to mitigate her damages

8    by making a diligent effort to find other employment. *Lords v. Northern Automotive Corp.*, 75

9    Wn. App. 589, 881 P.2d 256 (Div. III, 1994). The employer bears the burden of proving that the

10   employee willfully failed to mitigate damages. *Burnside v. Simpson Paper Co.*, 66 Wn. App.

11   510, 530 (Div. I, 1992). To satisfy its burden, Defendant must show that there were suitable or

12   "substantially equivalent" positions available and that Plaintiff failed to use reasonable diligence

13   in seeking them, but an employee is only required to be reasonably diligent in seeking new

14   employment "substantially equivalent to that from which he was discharged," noting that the

15   employee is not "required to seek employment similar to the work he performed for his previous

16   employer." *Burnside*, at 529-30 *aff'd*, 123 Wn.2d 93 (1994). To be substantially equivalent, a job

17   must afford "virtually identical promotional opportunities, compensation, job responsibilities,

18   working conditions and status," *Donlin v. Philips Lighting North America Corp.*, 581 F.3d 73, 85

19   (3rd Cir. 2009), and must not be "an unreasonable distance from [her] residence" *Donlin*, 581

20   F.3d at 89.[100]

21

22   As the undisputed record demonstrates, Ms. Offutt applied to more than 28 positions in a

23   40-mile vicinity of her home within six months of discharge, located no employers offering the

24   level of compensation, status and promotional opportunities of a Fortune 500 company, yet

25

26   ---

[100] An employee need not take a lower paying position within a company in order to mitigate damages in lieu of quitting. *See, Thorne v. City of El Segundo*, 802 F.2d 1131, 1134-36 (9th Cir. 1986).

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – 22
[3:17-cv-05521-RBL]

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

through her diligence was offered a position that paid a salary of $65,000 per year with the title of Assistant Controller less than a month after her discharge. Ms. Offutt was understandably relieved to find gainful employment in her field after Georgia-Pacific's galling "option" that a person with a degree and 12 years of accounting experience at the same company take an operations position on the manufacturing floor. By remaining continuously employed and demonstrating her merit and work ethic by receiving slight merit increases after 90- and 180-days, Ms. Offutt has thoroughly demonstrated her compliance with the duty to mitigate damages, and remains committed to maximizing her earning potential.

Tellingly, Ms. Offutt moved to a slightly higher paying accounting role eight months later at Washington Rock Quarries on December 14, 2017. By seizing such new opportunities as they come up, Ms. Offutt has shown a continuing willingness to comply substantially and seriously with her ongoing duty to mitigate.

Moreover, defense expert Shelley Lewis admitted in her deposition testimony that Ms. Offutt had properly mitigated her damages.[101] This admission by the Defendant's expert defeats Defendant's affirmative defense to the contrary.

Accordingly, where uncontroverted evidence shows no genuine dispute of material fact to support Defendant's affirmative defense alleging failure to mitigate damages, that affirmative defense should be dismissed.

## CONCLUSION

Plaintiff respectfully requests this Court to grant summary judgment for Plaintiff Shanna Offutt on each of the following claims:

(1) discrimination on the basis of marital status in violation of RCW § 49.60.180;

---

[101] Lewis Dep. 20:21-21:2, 29:16-21; 31:6-31:25, 52:6-10; JL Dec. Ex.47.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – 23
[3:17-cv-05521-RBL]

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

1    (2) discrimination on the basis of sex in violation of RCW § 49.60.180;

2    (3) wrongful discharge in violation of RCW § 49.60.210;

3    With respect to affirmative defenses, where no genuine dispute as to material fact exists,

4
Plaintiff asks this court to dismiss the affirmative defenses No. 4 and 5.

5
DATED this 28th day of May, 2019.

6

7                                LAW OFFICES OF
                                 JUDITH A. LONNQUIST, P.S.
8                                Attorneys for Plaintiff Shanna Offutt Evanger

9

10

11                               Judith A. Lonnquist, WSBA #06421
                                 Benjamin Phillips, WSBA #53604
12                               1218 Third Ave., Suite 1500
                                 Seattle, WA 98101-3021
13                               Telephone: 206.622.2086
                                 Fax: 206.233.9163
14                               Email: lojal@aol.com

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – 24
[3:17-cv-05521-RBL]

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I electronically filed the following document: Plaintiff's Motion for Summary Judgment, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Sarah N. Turner
Gordon Rees Scully Mansukhani
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
Main Phone: 206-695-5100
Direct Dial: 206-695-5115
email: sturner@grsm.com

Derek Bishop
Gordon Rees Scully Mansukhani
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
Main Phone: 206-695-5100
Email:

DATED: May 28, 2019

Law Offices of Judith A. Lonnquist, P.S.
1218 Third Ave, Suite 1500
Seattle, WA 98101
Telephone: (206) 622-2086
Fax: (206) 233-9165
E-mail: morissa@lonnquistlaw.com

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – 25
[3:17-cv-05521-RBL]

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165