The Hon. Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHANNA OFFUTT EVANGER,

    Plaintiff,

v.

GEORGIA-PACIFIC GYPSUM, LLC,

    Defendant.

No. 3:17-cv-05521

PLAINTIFF'S TRIAL BRIEF

## INTRODUCTION

This case has been brought pursuant to the Washington Law Against Discrimination (RCW 49.60) to redress discrimination based on marital status and sex. Plaintiff, Shanna Offutt Evanger, (a/k/a Shanna Offutt, hereinafter "Ms. Offutt") will show at trial that with respect to Plaintiff's claims, Defendant Georgia-Pacific Gypsum, LLC, (hereinafter "Georgia-Pacific") wrongfully discharged her upon learning that she had married a co-worker, Dennis Evanger, notwithstanding the fact that Defendant earlier had given its authorization for their relationship to proceed. The evidence will also show that Defendant discriminated against Plaintiff because of her sex by selecting her for discharge rather than the male in their relationship and by paying Plaintiff substantially less than a similarly situated male hired to replace her.

As to Defendant's affirmative defenses, the evidence will show that Ms. Offutt did not act, omit or conduct herself in any way to cause or contribute to the damages she suffered; and

PLAINTIFF'S TRIAL BRIEF
3:17-cv-05521-RBL - Page 1

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

Ms. Offutt met her duty to mitigate damages.[1] Evidence will show that Defendant's unlawful conduct caused Plaintiff significant economic damages and severe emotional distress.

The Washington Law Against Discrimination (WLAD) is a broad remedial statutory scheme that prohibits an employer from discriminating against an employee based on her marital status. In the instant case, Defendant Georgia-Pacific flagrantly violated the WLAD by discharging Ms. Offutt within minutes of Ms. Offutt's disclosure that she was married. Without dispute, Georgia-Pacific had possessed knowledge, for months prior, that Ms. Offutt was interested in, and was pursuing a romantic relationship with a co-worker, the identity of the co-worker, and possible consequences of the romance that included a proposal of marriage, a natural outcome of any romantic relationship, all of which Ms. Offutt considered and communicated to Georgia-Pacific.[2]

Although approving the relationship in December 2016, corporate officials in Atlanta allowed the issue to linger for up to three to four months, before terminating her for pretextual reasons. Initially Defendant raised the specter of a potential conflict of interest, then determined that although not ideal, the relationship could proceed, then contended that it knew only that the employees were simply considering a relationship, then deciding that if there were an actual relationship it would create a conflict of interest, then terminating her for marrying Mr. Evanger, and then attempting to cover up its misdeed by asserting that Plaintiff had voluntarily quit, and finally recording her departure as an involuntary termination due to her allegedly being "deceptive." (*See*: Plaintiff's Proposed Jury Instruction No. 5).

---

[1] Dkt. #2, Defendant's Answer, Affirmative Defenses Nos. 4 and 5.
[2] There is nothing in the Code of Conduct that expressly forbids employees from being married to another employee, nor does the Code of Conduct require employees to report to GP their marital status.

PLAINTIFF'S TRIAL BRIEF
3:17-cv-05521-RBL - Page 2

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

After her discharge from Georgia Pacific, the Washington Employment Security Department found that her termination was without good cause and awarded her unemployment compensation until she found another job. She began work at Belmont Cabinetry in April 2017,[3] and later procured a better job at Washington Rock Quarries where she continues to work as Accounting Manager.[4] Her wages and benefits at these jobs were below that which she earned at Georgia Pacific. Plaintiff's expert has opined that her economic damages through her age of retirement exceed $1.5 Million. (*See*: Plaintiff's Trial Exhibits 52, 53).

## ARGUMENT

**A. Georgia-Pacific's discharge of Ms. Offutt due to marriage constituted discrimination in violation of Ms. Offutt's marital status under RCW §49.60.180.**

"Washington law prohibits discharge based on an employee's…marital status." *Kastanis v. Educ. Employees Credit Union*, 122 Wn.2d 483, 500, 859 P.2d 26, 35, modified, 865 P.2d 507 (1993) citing RCW 49.60.180(2); *Roberts v. ARCO*, 88 Wn.2d 887, 891 n. 1, 568 P.2d 764 (1977)(*See also*: Plaintiff's Proposed Jury Instruction No. 2). Enacted as part of the broad remedial statutory framework, the Washington Law Against Discrimination (WLAD) contains a sweeping policy statement strongly condemning discrimination in many forms and provides that its provisions "shall be is construed liberally for the accomplishment of the purposes thereof." RCW 49.60.020. The exceptions to the rule that an employer may not discriminate on the basis of marital status are narrow. See WAC 162-16-250(2).[5] "The commission believes that the…exception should be applied narrowly." See WAC 162-16-240.

---

[3] Plaintiff Response to Defendant's Request for Production No. 18, at Bates SOE 000148-149.
[4] Plaintiff Response to Defendant's Request for Production No. 18, at Bates SOE 000164-165.
[5] WAC 162-16-250(2)(a)-(b) allow narrow exceptions if a bona fide occupational qualification applies or an employer is enforcing a documented conflict of interest policy limiting employment opportunities on the basis of marital status where certain criteria are met – not dispositive here.

PLAINTIFF'S TRIAL BRIEF
3:17-cv-05521-RBL - Page 3

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

Ms. Offutt was a productive and well-respected employee who, out of an abundance of caution and desire to be transparent, notified her supervisor of her interest in pursuing the relationship. Nearly three months passed before Georgia-Pacific revoked its earlier approval and decided that Ms. Offutt's relationship jeopardized her job.[6] Ms. Offutt's personnel file with Defendant is well-documented, crediting her 11 years exemplary service to Georgia-Pacific and meteoric career rise since the company moved her across the country to Tacoma; her work history contains nothing to warrant the immediate discharge.

To establish her marital status discrimination claim, Plaintiff has the burden of proving each of the following propositions: (1) that Georgia Pacific Gypsum took an adverse employment action her;[7] and (2) that Plaintiff's marital status was a substantial factor in Defendant's decision to take the adverse action. (WPI Civil No. 330.01)(*see also*: Plaintiff's Proposed Jury Instruction No. 3).

Under Washington law, "the 'substantial factor' standard is the proper one in a discrimination case brought under RCW 49.60.180." *MacKay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 898 P.2d 284 (1995).[8] "Substantial factor" means a significant motivating factor in bringing about the employer's decision. "Substantial factor" does not mean the only factor or the main factor in the challenged act or decision. (WPI 330.01.01)(*see also*: Agreed

---

[6] Local HR Director Mollie Gosselin testified in deposition that the "first indication that corporate had changed its mind was only about a week before Mr. Voutila came to Tacoma to present "options" to Ms. Offutt (Gosselin Dep. 110:2-6). Gosselin was "very surprised" because "we were on course that everything was ok." Gosselin Dep.111:14-18.
[7] An "adverse employment action" is one that materially affects the terms, conditions or privileges of employment. WPI 330.01.02; see also: Agreed Jury Instruction No. 16.
[8] The *MacKay* court explained its rationale as follows: "Washington's disdain for discrimination would be reduced to mere rhetoric if this court were to require proof that one of the attributes enumerated in RCW 49.60.180(2) was a 'determining factor' in the employer's adverse employment decision. This court will not render its own words, and those of the Legislature, hollow. Accordingly, we decline to adopt the 'determining factor' standard in a case Instead, we hold that in order to prevail on such a claim a plaintiff must prove that an attribute listed in RCW 49.60.180(2) was a 'substantial factor' in an employer's adverse employment decision." *MacKay*, at 284.

PLAINTIFF'S TRIAL BRIEF
3:17-cv-05521-RBL - Page 4

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

Jury Instruction No. 16).

The plaintiff need not prove the motivating factor was a determining one.[9] It can even be one of two or more reasons for the negative employment action, even if one of those reasons is legitimate. *Mendoza v. The Roman Catholic Archbishop of Los Angeles*, 824 F.3d 1148 (9th Cir. 2016).

Based on the undisputed evidence, Defendant Georgia-Pacific considered Ms. Offutt's marital status a substantial factor justifying her discharge. Defendant will be unable to present credible evidence of legitimate non-discriminatory factors justifying discharge, thus Plaintiff will be able to satisfy the first prong of the *Kastanis* two-prong test.

Under the second prong, the evidence will show that Defendant's treatment of Plaintiff was not justified or excused by "business necessity," or "bona fide occupational qualification" ("BFOQ"), which Defendant and the *Kastanis* court treated as the same. A business necessity defense includes those circumstances where an employer's actions are based upon a compelling and essential need to avoid business-related conflicts of interest, *Kastanis*, at 488-89:

(i) [w]here one spouse would have the authority or practical power to supervise...remove, or discipline the other;
(ii) [w]here one spouse would be responsible for auditing the work of the other;
(iii) [w]here other circumstances exist which would place the spouses in a situation of actual or reasonably foreseeable conflict between the employer's interest and their own;
(iv) "to avoid the reality or appearance of improper influence or favor, or to protect its confidentiality, the employer must limit the employment of close relatives of policy level officers of customers,...or others with whom the employer deals." WAC 162-16-250.

None of these factors is extant in this case.

In *Kastanis,* a bank CEO and teller began dating openly in full compliance with the relevant provisions of the corporate anti-nepotism policy. When the couple announced they

---

[9] *Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 898 P.2d 284 (1995).

PLAINTIFF'S TRIAL BRIEF
3:17-cv-05521-RBL - Page 5

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

were to be married, the board of directors voted to terminate the female spouse who brought suit and prevailed on claim of marital status discrimination. Like the plaintiff in *Kastanis*, Ms. Offutt, announced she would pursue a romantic relationship openly and in full compliance with relevant policies. Arguably, Ms. Offutt should have been in a safer position than the plaintiff in *Kastanis*, since far from being CEO or in any position with authority or practical supervisory power over Ms. Offutt, Mr. Evanger is an hourly-wage employee with no supervisory authority who works in an entirely separate department. Even if the roles were reversed, Ms. Offutt's case is *a fortiori* to *Kastanis*.

Under Washington law, an essential function in a job duty is one fundamental, basic, necessary and indispensable and does not include a marginal duty divorced from the essence or substance of the job.[10] Although Defendant may attempt to portray Ms. Offutt as part of its "management team," the evidence will show that she had no authority or practical power to supervise, remove, or discipline Mr. Evanger. Ms. Offutt did not audit Mr. Evanger's work.[11] None of her essential job functions implicated a conflict of interest.

Through her conversations with her local and corporate managers, Ms. Offutt was led to believe her relationship would be manageable, especially if some combination of enhanced CDA and mitigation plan would be put into place.[12] The evidence will show that no one from Georgia-Pacific reached out to Ms. Offutt from the December approval until March, when Mr. Voutila delivered Georgia-Pacific's changed position and ultimatum. Georgia-Pacific had no specific documented policy stating that plant operations employees and members of the

---

[10] WPI 330.37 (6th Ed.); *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 533 (Wash. 1993) (quoting 29 C.F.R. 630.2(n)(1) (emphasis in original) (where the central claim was brought under the ADA).
[11] Ms. Gosselin and Ms. Wells testified in deposition that payroll was an HR function and had to be certified by a manager. Gosselin Dep. 29:16-22; Wells Dep. 102:18-103:3; JL Dec. Ex. 14, Ex. 2.
[12] No corporate official followed up with Ms. Gosselin to create an enhanced CDA. Gosselin Dep. 93:24-95:23; JL Dec. Ex. 14.

PLAINTIFF'S TRIAL BRIEF
3:17-cv-05521-RBL - Page 6

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

Controller Group could not fraternize, date or be friends. Moreover, the position that the couples' roles were an actual or reasonably foreseeable conflict or precluded by need to avoid improper influence, favor or confidentiality is specious where all employees were already required to sign a confidentiality agreement.

**B. Defendant's Conflict of Interest Defense is Pretext.**

At trial, corporate officials are likely to claim, as each did in deposition, that the Offutt/Evanger relationship constituted a conflict of interest because Ms. Offutt might disclose confidential information useful to the union in collective bargaining.[13]  Such claim will be repudiated by testimony from witnesses that Georgia-Pacific's concern about disclosure by Plaintiff of confidential financial information is simply pretext, given that Georgia Pacific is legally obligated to turn over any information, including all financial information, to the union upon request. Failure to do so would result in a violation of federal labor law.[14]

In *Kastanis*, the defendant employer appealed a lower court refusal to give a "reasonably necessary" instruction. The appeal was denied. Writing for an undivided court,[15] Justice Madsen reaffirmed that actions brought under WLAD required the more exacting "compelling and essential need standard." *Id.*, at 29. Similarly, Georgia-Pacific has not presented evidence that Ms. Offutt's discharge was compelled by essential need. Accordingly, Georgia-Pacific should not expect to escape liability through the business necessity defense that the legislature through its implementing regulations intended to be narrowly construed.[16]

---

[13] Gosselin Dep. 90:7-92:14, 60:19-61:19, 172:15-173:6; JL Dec. Ex. 14.
[14] 29 USC Section 151 *et. seq.* – duty to provide information requested by union: *NLRB v. Acme Industrial Corp.*, 385 U.S. 432, 87 S.Ct. 565 (1967); *NLRB v. Realty Maintenance Inc.*, 723 F.2d 746 (9th Cir. 1984). *See also:* Gosselin Dep. 90:7-10; JL Dec. Ex. 14.
[15] Six justices signed on to Justice Madsen's opinion. The Chief concurred only in the result. One justice did not participate in the disposition.
[16] "The commission believes that the…exception should be applied narrowly." See WAC 162-16-240.

PLAINTIFF'S TRIAL BRIEF
3:17-cv-05521-RBL - Page 7

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

Based on facts averred in the undisputed record, where Georgia-Pacific directly attributed Ms. Offutt's discharge to her marriage, and can make no credible showing of 'compelling and essential' need required under Washington law. Accordingly, the jury is likely to find for Plaintiff on her claim of marital status discrimination.

As noted above, Defendant employer's multiple, incompatible reasons for termination of employment may be found by the jury to be pretext to disguise the real discriminatory reason (*supra*, p. 2). *Sellsted v. Wash. Mutual Sav. Bank,* 69 Wn. App. 852, 861, 851 P.2d 716 (Div I, 1993); *rev. den'd*, 122 Wn.2d 1018 (1993)(see also Plaintiff's Proposed Jury Instruction No. 5). In *Sellsted*, the Court determined that multiple, incompatible reasons for Mr. Sellsted's termination could and should be considered by the jury as pretext, unworthy of belief. The jury in this case will have good reason to find that Georgia Pacific's articulation of multiple, incompatible reasons for Plaintiff's discharge constitutes pretext for its discrimination against her.

**C. Georgia-Pacific's decisions to discharge Ms. Offutt, the woman, rather than Mr. Evanger, the man, and to replace Ms. Offutt with a man at substantially higher pay, each separately constitute sex discrimination in violation of RCW § 49.60.180.**

To establish her sex discrimination claim, Plaintiff has the burden of proving each of the following propositions: (1) that Georgia Pacific Gypsum took an adverse employment action her; and (2) that Plaintiff's sex was a substantial factor in Defendant's decision to take the adverse action. WPI 330.01; see also Plaintiff's Proposed Jury Instruction No. 4.

The evidence will show that Georgia Pacific unilaterally decided to terminate female Offutt rather than male Evanger, despite the unique and highly skilled abilities of the former and without any thought given as to terminating Mr. Evanger who had volunteered to leave Georgia Pacific if his wife's termination was imminent. Defendant singled out Ms. Offutt for

PLAINTIFF'S TRIAL BRIEF
3:17-cv-05521-RBL - Page 8

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

adverse action by seeking to impose its "three options" upon her, and when she opted for none, terminating her employment. Given a choice between firing the male or the female in an alleged problematic relationship, arbitrarily choosing the female establishes that sex was a substantial factor.

The other sex-based discrimination as shown by the facts that Defendant discharged Ms. Offutt, and replaced her with a male candidate, offering the male candidate a starting salary 25% higher than Ms. Offutt's last recorded annual salary[17] after 12 years with the company. Ms. Offutt's last reported salary was $80,000; her replacement was offered $100,000 to begin, plus an additional one-time $37,000 moving incentive,[18] without considering any additional compensation in the form of bonuses he likely received as a part of Georgia-Pacific's "PPay" or performance pay incentive program.[19] The record shows Ms. Offutt's performance was outstanding and regularly meeting or exceeding performance expectations.

Georgia-Pacific's internal personnel files demonstrate knowledge of how shockingly undercompensated Ms. Offutt was compared to others in her profession geographic location and role[20] while being groomed to take on greater responsibilities as soon as December 2019.[21] By hiring a male to replace Ms. Offutt at a base salary 25% greater than her highest salary and a premium of 61% higher in the first year, GP exacerbated its sex discriminatory conduct.

---

[17] Paying a woman a disparate salary is *per se* adverse action.
[18] Put another way, Plaintiff earned 61.8% of her male replacement's first year salary measuring Plaintiff's fiinal year salary from March 2016 to March 2017, considering her raise from 75,000 to 80,000 in June 2016, and calculating a weighted average over Plaintiff's last 12 months plus a $6,000 bonus compared to the male replacement candidate's $137,000 offer in the first year for a percentage difference of 61.8% (0.618 = 84,720/137,000). It is unknown whether the male candidate received a bonus during his first year.
[19] Wells Dep. 170:5-12; JL Dec. Ex. 2.
[20] "External market data indicates that Shanna is under the 25th percentile for the Plant Controller role. This is based on the external role title of "Plant Accounting Manager, Plant Controller, and Financial Analyst I." Internal max for the role is $105K and average is 89K." Voutila Dep. Ex. 24; JL Dec. Ex. 33.
[21] Def Prod. Bates 1027; JL Dec. Ex. 45.

PLAINTIFF'S TRIAL BRIEF
3:17-cv-05521-RBL - Page 9

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

Under Washington law, a plaintiff only has to show that gender was a substantial factor, not the compelling reason for the decision to terminate her employment. *Mackay v. Acorn Custom Cabinetry*, 127 Wn.2d 302, 309, 898 P.2d 284 (1995); see also Plaintiff's Proposed Jury Instruction No. 4. As the above facts persuasively illustrate, Ms. Offutt suffered discrimination on the basis of her sex where no other factor can conceivably explain such a wide gap in pay or Georgia-Pacific's choice to terminate a wife rather than a husband.

**D. Defendant Violated Its Own Policy in Terminating Plaintiff.**

Defendant's HR Toolkit requires that:

> Human Resources Leaders must review all individual employment terminations for consistency of treatment with any similarly situated employees and for compliance with applicable law …keeping in mind any protected activity.

(Trial Exhibit 9, at p. 46.) Evidence adduced at trial will show several examples of GP's violations of this policy in the way Plaintiff's termination was handled. For example, Tacoma employee, Marcia Catlett, engaged in an actual, proven conflict of interest by diverting work that could be done by GP employees to an independent contractor, her husband, and authorizing the work orders resulting in payment of GP funds to him and his company. Plant manager Kirk Hargett and Plaintiff were responsible for detecting this nefarious conduct and reporting it. The investigation done by GP concluded that the Catlett matter was an actual code of conduct violation. Nonetheless, Marcia Catlett was not terminated. As this investigation was occurring close in time to Plaintiff's romantic pursuit of, and marriage to, Dennis Evanger, Cherie Wells or other Human Resources Leaders should have been aware of both scenarios. The retention of Marcia Catlett and the termination of Shanna Offutt constitute a glaring inconsistency of treatment and an obvious breach of GP's HR Toolkit.

Another type of inconsistency regarding Plaintiff's termination will be presented at trial

PLAINTIFF'S TRIAL BRIEF
3:17-cv-05521-RBL - Page 10

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

involving GP's condonation of marriage/romantic relationships between other GP employees, even those who are in supervisory positions over their spouse/partner. For example, Jennifer Barron, the Plant Manager in Fletcher, Oklahoma, is married to Dean Barron, who works under the operations umbrella as a production supervisor and reports up through the Plant Manager's organization, and yet they both have retained their respective positions at GP.  So too, has Tacoma manager Jill Munro, despite her relationship with Mike Moore, neither of whom have been terminated for an alleged conflict of interest.

Inconsistency of treatment of employees similarly situated to Plaintiff violates GP policy and legally presents illegal motivation. *Porter v. California Dept. of Corrections,* 383 F.3d 1018, 1026 (9th Cir 2004); *see also*: *Giacoletto v. Amax Zinc Co.*, 954 F.2d 424, 427 (7th Cir. 1992) ("The jury could reasonably have concluded that because Amax neglected to follow [its] procedures for helping employees to overcome their deficiencies, the company had fired Giacoletto not because of his asserted deficiencies," but for an illegal reason.  GP's inconsistent application of its policy regarding individual terminations is yet another reason why the jury likely will find that its termination of Plaintiff was illegally discriminatory.

### E. Plaintiff is Entitled to Damages.[22]

Under WLAD, Ms. Offutt is to be made whole through back pay to the time of trial, front pay, noneconomic damages and all other appropriate forms of relief. *Blaney v. Int'l Ass'n of Machinists,* 151 Wn.2d 203, 87 P.3d 757 (2004).[23] WLAD's appropriate remedy is described as "a full panoply of compensatory damages" aimed at allowing the plaintiff to "become whole." *Dailey v. North Coast Life Ins. Co.,* 129 Wn.2d 572, 574, 919 P.2d 589 (1996). WLAD is more robust than Title VII in that there are no caps on the amount that can be awarded.

---

[22] See: Plaintiff's Proposed Jury Instruction No. 9.
[23] See: Plaintiff's Proposed Jury Instruction No. 10.

PLAINTIFF'S TRIAL BRIEF
3:17-cv-05521-RBL - Page 11

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

Moreover, "[o]nce discrimination has been found, any doubts concerning back pay are to be resolved against the employer." *Burnside v. Simpson Paper Co.,* 66 Wn.App. 510, 531, 832 P.2d 537 (1992). Under WLAD, courts are to "presume that an illegally discharged employee would have continued working for the employer until she reaches normal retirement age, unless the employer provides evidence to the contrary." *Xieng v. People's Nat'l Bank*, 120 Wn.2d 512, 531, 844 P.2d 389 (1993). Also under WLAD, emotional distress damages would be available even in the absence of medical testimony or any medical records. *Bunch v. King County Dep't of Youth Services,* 155 Wn.2d 165, 180-81, 116 P.3d 381 (2005).

## CONCLUSION

Based on the foregoing, Plaintiff intends to present her claims at trial beginning August 26, 2019. At the conclusion of this trial, she will request from the jury an award of damages. Assuming the jury returns a verdict in her favor, Plaintiff will move this Court for tax relief and for an award of attorney fees and costs.

RESPECTFULLY SUBMITTED this 13th day of August, 2019.

LAW OFFICES OF JUDITH A. LONNQUIST, P.S.
Attorneys for Plaintiff Shanna Offutt Evanger

By *[signature]*

By *[signature] Ben Phillips*
Judith A. Lonnquist, WSBA # 06421
Benjamin R. Phillips, WSBA #53604
1218 Third Avenue, Suite 1500
Seattle, WA 98101-3021
Phone: (206) 622-2086
Fax: (206) 233-9165
Email: lojal@aol.com
 ben@lonnquistlaw.com

PLAINTIFF'S TRIAL BRIEF
3:17-cv-05521-RBL - Page 12

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

## CERTIFICATE OF SERVICE

I, Morissa Knudsen, hereby certify that on this date I electronically filed the foregoing Trial Brief with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| Party | Method of Service |
|---|---|
| Sarah N. Turner<br>Derek A. Bishop<br>Gordon Rees Scully Mansukhani, LLP<br>701 5th Avenue, Suite 2100<br>Seattle, WA 98104<br>sturner@gordonrees.com<br>dbishop@gordonrees.com | ☐ Hand Delivery<br>☐ Legal Messenger<br>☐ Regular Mail<br>☒ E-served by Court<br>☐ E-Mail |
| Chad A. Shultz<br>Gordon Rees Scully Mansukhani<br>55 Ivan Allen Jr. Blvd. NW, Suite 750<br>Atlanta, GA 30308<br>cshultz@grsm.com | ☐ Hand Delivery<br>☐ Legal Messenger<br>☐ Regular Mail<br>☒ E-served by Court<br>☐ E-Mail |

Dated: August 13, 2019

*/s/ Morissa Knudsen*
Morissa Knudsen

PLAINTIFF'S TRIAL BRIEF
3:17-cv-05521-RBL - Page 13

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165