HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON, AT TACOMA

SHANNA OFFUTT EVANGER,

                Plaintiff,

vs.

GEORGIA-PACIFIC GYPSUM, LLC,

                Defendant.

NO.  3:17-CV-05521-RBL

**DEFENDANT'S TRIAL BRIEF**

## I.  INTRODUCTION

Defendant Georgia-Pacific Gypsum, LLC ("Defendant" or "GP") submits this Trial Brief to the Court in advance of the jury trial scheduled for August 26, 2019.  In this matter, former plant controller, Plaintiff Shanna Offutt Evanger ("Plaintiff" or "Evanger") alleges that she was wrongfully terminated and discriminated against on the basis of her marital status and gender. Initially, Plaintiff followed GP's policy of disclosing to management that she was interested in pursuing a romantic relationship with an hourly employee who also happened to be one of the Tacoma plant's union stewards so GP could determine whether the potential relationship rose to an actual or perceived conflict, and, if a conflict existed, could it be effectively mitigated.  After

DEFENDANT'S TRIAL BRIEF - 1
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile:   (206) 689-2822

an extensive review of mitigation options it was determined by the leader of the controller group, Ann Johnson, that the relationship was a perceived conflict that could not be successfully mitigated. When Evanger's supervisor, along with the controller's human resources professional, provided Plaintiff with her mitigation options, Plaintiff rejected all of them and after taking a couple of days to decide what option to take, Evanger reported for the first time that none of the options would work because Plaintiff and Dennis Evanger had married on December 16, 2016. The evidence presented to the jury will clearly establish that prior to learning that Plaintiff was married to Dennis Evanger, Plaintiff had notified the controller team only that she was considering "pursuing a relationship." Should the jury follow Plaintiff's timeline, Plaintiff dated Mr. Evanger for less than 8 weeks prior to the "secret" marriage. Plaintiff was not terminated for being married, but rather for intentionally being deceitful, misleading, and not forthcoming as to the status of her relationship with Dennis Evanger.

## II.     FACTUAL BACKGROUND

*A.     Shanna Evanger's Transfer and Promotion to Plant Controller.*

In 2013, GP purchased a gypsum plant where Plaintiff worked as a plant accountant in West Memphis, Tennessee. In 2014, Plaintiff was offered an opportunity to relocate to Tacoma, Washington where she was offered a position as a Senior Analyst. Shortly thereafter, Evanger was promoted to Plant Controller after the former controller unexpectedly terminated his employment. GP offered Evanger the Plant Controller role understanding she did not have all the skills or experience to fulfill the qualifications at that time, but the controller group had the confidence she had the ability to develop them.

At GP the controller group was intentionally designed to be an internal service organization with an independent reporting line from the other business groups. This was done

DEFENDANT'S TRIAL BRIEF - 2
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

to avoid any local pressure to corrupt its auditing and financial reporting. The Plant Controllers service the business and manufacturing customers, and report up through the corporate controller organization. The controllers refer to the plant managers and management team as their "customer." Evanger's direct supervisor was regional controller, Rob Voutila, who was based at the Company's headquarters in Atlanta. Ann Johnson, Vice President Controller, had the "decision-rights" for hiring and firing Plant Controllers with the concurrence of Scott Gordon, Chief Accounting Officer. The controller group also has a separate Human Resources ("HR") team assigned to it. The local management team at Tacoma included Plant Manager Kirk Hargett and HR Director Mollie Gosselin. They did not have employment-related decision-making authority over Evanger as the Plant Controller, and they could not otherwise influence the terms of her employment.

*B.     Code of Conduct Addresses Personal Relationships*

GP places a great emphasis on its employees regarding company compliance and ethical decision-making expectations. GP expects all employees to hold themselves to the highest legal and ethical standards. The Code of Conduct ("Code") communicates these expectations to the employees and it covers a wide range of categories including discrimination and harassment, non-violent workplace, privacy and data protection, acceptable electronic usage, trademarking, "*conflicts of interest,*" government contracts, anti-corruption, and antitrust and competition. At issue here is the section related to potential conflict of interest where there is a personal relationship that interferes with the responsibilities to the company. The Code specifically addresses when co-workers want to engage in a romantic relationship the employees must avoid the appearance of a conflict, actual or perceived, and if the employees were to find themselves in such a situation the employees should notify their supervisors.

Evanger believed that entering into a relationship with Dennis Evanger would potentially

DEFENDANT'S TRIAL BRIEF - 3
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile:   (206) 689-2822

create a perceived conflict so on or about October 25, Evanger contacted her supervisor Rob Voutila to report that she was considering "pursuing a relationship" with an hourly employee. In response, Voutila raised the issue up the ladder where, ultimately, GP's VP of Controllers Ann Johnson evaluated and concluded that pursuing a relationship would create a conflict of interest. GP will offer substantial evidence that a relationship between Shanna Evanger (Plant Controller/leadership team) and Dennis Evanger (an hourly employee/union steward) would create a conflict of interest. As a member of the leadership team, Shanna Evanger received confidential financial and proprietary information that was not disclosed to the hourly employees. As the Plant Controller she was a business partner to the leadership of the plant and advised as to financial planning and analysis function. Further, controllers oversee the internal financial control, maintaining the accuracy and integrity of the financial statements for the plant, and for closing the books monthly. Evanger does not dispute that these were her duties and responsibilities, and she freely admits to having access to sensitive financial, confidential and proprietary documents, including all employees' personnel, payroll, and benefits information. Further, Dennis was a union steward who actively participated in collective bargaining negotiations. The possibility that Evanger might share (even inadvertently) the financial and proprietary information she had access to was heightened if they were in a romantic relationship. The resulting harm, should she share (inadvertently or not) this information, would have been greater, since Dennis was a union leader who actively participated in collective bargaining.

Upon determining a conflict existed, Johnson, along with the assistant of Cherie Wells from HR and the other members of the controller management team, extensively evaluated the potential conflict and consulted with each other, legal team, labor department, and the Equal Employment Opportunity ("EEO") group to determine whether the conflict of interest could be effectively mitigated. Ultimately, it was determined that if Evanger were to remain as Tacoma's

DEFENDANT'S TRIAL BRIEF - 4
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile:  (206) 689-2822

Plant Controller, she would have to relinquish her fundamental duties which included financial planning for the Plant, payroll activities, access to existing systems that contained employees' confidential and private information, participation in meetings where financial and proprietary information was discussed, helping to prepare for union negotiations, helping to assist with management reporting of financials, and being the "thought leader" on financial situations that might impact the Plant.  As of the end of February 2017 it was determined that the conflict could not be effectively mitigated in a way that would allow Evanger to meet the expectations of the Plant Controller role.  At that time, the Controller leadership team identified three mitigation options that would allow Evanger to pursue the relationship with the hourly employee.  She could either relocate to another non-Controller position within the plant, relocate to a Plant Controller position in another facility, or take 30 days paid to locate other employment outside the plant.

        C.    *Disclosure of Secret Wedding*

On or about March 9, Voutila met in person with Evanger to notify her that after extensively evaluating the conflict should Evanger pursue the relationship it had been decided by Johnson that the conflict could not be effectively mitigated.  Voutila presented Evanger with the three options.  Evanger was to meet with Voutila the following Monday to inform him of her decision.  On Monday, Evanger said she needed another day to consider her options so the meeting was rescheduled to Tuesday.

At the Tuesday meeting, the Plant Manager and local HR were physically present with Evanger and Voutila and the controller HR Cherie Wells appeared by phone.  During the call, Evanger informed Voutila that none of the options would be acceptable because she and the hourly employee were married.  Everyone present at this meeting was stunned.  No one knew that Evanger and Dennis Evanger had married, and that they were married on December 16,

DEFENDANT'S TRIAL BRIEF - 5
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile:   (206) 689-2822

2016. Wells responded telling Evanger that the meeting would need to be rescheduled and she and Voutila needed to discuss with legal and the controller team. After the call, Wells notified Johnson of the development. Johnson was shocked to hear the development but concluded it did not change the fact that there was a conflict that could not be mitigated. Johnson was more troubled that Evanger had not disclosed this important development especially since she had told the controllers she was looking to "pursue a relationship" not that she had entered one, or that she had planned on marrying this co-worker. Not only does GP place a high value on employee's honesty and trustworthiness, these characteristics are non-negotiable for any employee involved with the company's financials. Johnson could not keep employed a controller who had been dishonest and lacked the judgment to be forthcoming about her status change. To not report her marriage to this co-worker appeared to be intentional and deceptive. Since Evanger rejected all three options to mitigate the conflict, Johnson directed Voutila to accept Evanger's implicit adoption of the third option. This option would be escalated so the termination would be effective immediately and without the 30 days remaining on the payroll.

Voutila called Evanger the next day and told her of the termination effective immediately for failing to adequately cooperate by not disclosing the status of the relationship. Evanger found a job within 3 weeks in a local businesses payroll department and as of December 2017, Evanger found another job where she is making close to her GP salary and she has admitted being happy and content working for this current employer.

D. *Timeline of the Hidden Relationship.*

Evanger has expressed frustration that GP did not appear to trust her with confidentiality when she believed she had strong moral conduct, honesty and integrity. Yet, her actions proved otherwise. During this litigation, GP has learned that Evanger started to "pursue a relationship"

DEFENDANT'S TRIAL BRIEF - 6
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile:   (206) 689-2822

with Dennis much earlier than October 2016.  In fact, at trial the jury will hear evidence that the relationship existed as of March 2016:

- On March 4, 2016, Dennis and Plaintiff traveled together to Las Vegas to see a UFC fight, where they shared a room and a bed for three days.
- In July of 2016, Dennis and Plaintiff had a relationship that included physical intimacy in the form of kissing.
- In July of 2016, Dennis and Plaintiff traveled together to Las Vegas for UFC200.  They again shared a room and a bed for the duration of this trip.
- In August of 2016, the two traveled together to Portland, shared a bedroom, and Dennis attempted to have sex with Plaintiff.
- In October of 2016, Dennis started to discuss the idea of marriage with Plaintiff.
- On October 20, 2016, Plaintiff emailed a potential landlord for Dennis stating that her boyfriend was moving and that they were planning to get married in December.
- On November 22, 2016, Dennis moved into Shanna's house.  At this time, they shared meals, a room and a bed, and would kiss and otherwise act as if they were romantically involved.

The jury will also hear how Plaintiff misled GP from the beginning about the nature of her relationship when she told Voutila she was interested in "pursuing a relationship" and not that she was "pursuing marriage."  She and Dennis married on December 16, 2016, while the mitigation of the conflict was still being investigated by Johnson and her team.  The jury will also hear evidence that despite Plaintiff stating she believed to have approval from Voutila to pursue the relationship, Evanger will testify that she did not disclose her marriage to co-workers, the local management team, or Voutila.  Evanger will also testify that she did not wear her wedding ring, change her name, and neither she or Dennis updated their personal or tax

DEFENDANT'S TRIAL BRIEF - 7
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile:  (206) 689-2822

information with GP. The jury can easily surmise that Evanger was fully aware that her relationship posed a conflict with a high risk of no mitigation. At the very least, this information substantiates Johnson's concern that Evanger's act was deceitful and dishonest, and that as a controller should could no longer be trusted with GP's financials.

### III. LEGAL ANALYSIS

A. *Evanger Will Not Be Able to Meet Her Burden of Establishing Marital Discrimination*.

Washington's Law Against Discrimination ("WLAD") prohibits an employer from discriminating against an employee based on their marital status. RCW 49.60.180(2) ("It is an unfair practice for any employer: (2) To discharge or bar any person from employment because of . . . marital status. . ."). At trial, the jury does not take into account burden shifting. Plaintiff must meet the burden of establishing a *prima facie* case and in marital discrimination she has the additional burden of establishing that GP did not enforce a documented conflict of interest policy. *See Kastanis v. Educ. Employees Credit Union,* 859 P.2d 26, 32 (Wn 1993).[1] Under this test, Plaintiff is required to prove: "(1) [s]he belonged to a protected class, (2) [s]he was treated less favorably in the terms or conditions of [her] employment (3) than a similarly situated, non-protected employee, and (4) [s]he and the non-protected 'comparator' were doing substantially the same work." *See Johnson v. Dept. of Social & Health Servs.*, 80 Wash. App. 212, 227, 907 P.2d 1223 (1996). For the reasons addressed below, Evanger will not be able to meet this burden.

---

[1] Should plaintiff move for a directed verdict the Court would apply the McDonnell Douglas burden shifting of plaintiff establishing a *prima facie* case and GP providing a legitimate non-discriminatory reason for the adverse action. *Kastanis,* 122 Wn..2d at 490-91 (*internal citations omitted*) ("The employer bears only the burden of producing a legitimate reason for discharge to avoid a directed verdict in the employee's favor.").

DEFENDANT'S TRIAL BRIEF - 8
Civil Action No. 3:17-cv-05521-RBL

GORDON REES SCULLY
MANSUKHANI, LLP
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

*B.     At the Time of the Decision the Controller Team Did Not Know Plaintiff was Married.*

GP will present evidence that Plaintiff did not disclose to local management or the controller group that she was married until after being presented with the three options. This evidence supports GP's controller team that will consistently testify that at the time the decision was made that a conflict existed that could not be mitigated it was the controller's understanding that Evanger was considering "pursuing a relationship." They had no idea that Evanger had married Dennis on December 16, 2016. This is critical because under the WLAD, there cannot be any discrimination by the decision-makers when there is no knowledge that plaintiff is in a protected class. *See See Busey v. Richland School District*, 172 F.Supp.3d 1167, 1180 (E.D. Wash. 2016)(quoting *Veenstra v. Washtenaw Country Club*, 466 Mich. 155, 165, 645 N.W.2d 643 (2002) ("Adverse action against an individual for conduct, without regard to a protected status, provides no basis for recourse under the Civil Rights Act.")). Since the decision-makers did not know Evanger was married at the time of the decision to propose three options, one of which was termination, GP could not have violated the WLAD because the decision was not made on the basis of her marital status.

Further, Washington courts have clearly held that employees who are in a dating or even cohabitating relationship are not protected under WLAD. *See Waggoner v. ACE Hardware Corp.*, 134 Wn.2d 748 (1998). In *Waggoner*, the Washington Supreme Court was presented with two issues: (1) does employment action against cohabiting or dating employees violate RCW 49.60.180 which prohibits marital status employment discrimination; and if so (2) does the "business necessity" justify the discrimination in this case. *Id*. at 750. Upon reviewing the statutory construction prohibiting marital discrimination, particularly finding that the Legislature expanded the definition of "marital status" to include being legally separated while being married. *Id*. at 756. The *Waggoner* Court held "that the Legislature considered what the

DEFENDANT'S TRIAL BRIEF - 9
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile:   (206) 689-2822

definition should include, expanded the definition as it saw fit, yet, stopped short of extending its scope to include cohabiting or dating relationships." *Id*. Finding that the "plain meaning of marital status does not encompass cohabiting or dating relationships," the *Waggoner* Court held that it "must enforce the statute as written without judicial interpretation" and concluded that cohabiting or dating relationships are not aspects of marital status and thus, find the absence of business necessity superfluous. *Id*. at 753-54.

>   C.   *Plaintiff Cannot Meet Her Burden that GP Did Not Enforce a Documented Conflict of Interest Policy.*

While Washington has prohibited discrimination on the basis of marital status, it has also recognized exceptions to that general rule. *See* WAC 162-16-250. Specifically, the state provides that an exception to this rule applies where "a bona fide occupational qualification applies" or where "an employer is enforcing a documented conflict of interest policy limiting employment opportunities on the basis of marital status." *Id.* That allows employers to enforce a conflict of interest policy based on a number of factors, including where "circumstances exist which would place the spouses in a situation of actual or reasonably foreseeable conflict between the employer's interest and their own" or "where, in order to avoid the reality or appearance of improper influence or favor, or to protect its confidentiality, the employer must limit the employment of close relatives of policy level officers of customers, competitors, regulatory agencies, or others with whom the employer deal." WAC 162-16-250 (2)(b)(iii), (iv). Plaintiff bears the burden to prove that GP's actions were not taken based on one of the exceptions in WAC 162-16-250.[2]

GP also anticipates Plaintiff will rely on the older and defunct regulation that had in the

---

[2] Based on Plaintiff's summary judgment motion, pre-trial statement, and proposed jury instructions, GP anticipates that Plaintiff will challenge that she has the burden of establishing that GP's actions were not based on business necessity as identified in WAC 162-16-250. It is also expected that Plaintiff will rely on an older version of the business necessity rule as it pertains to marital discrimination.

DEFENDANT'S TRIAL BRIEF - 10
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile:  (206) 689-2822

past governed marital discrimination as WAC 162-16-150, but since 1999, the regulation was revised and re-numbered as WAC 162-16-250, and is the current regulation governing martial discrimination. This distinction is imperative because the two regulations are starkly different from one another. During the mid-1970s, the Human Rights Commission ("HRC") enacted WAC 162-16-150, to address marital discrimination, the pertinent part which stated:

> Discrimination Because of Spouse. (1) *Authority.* This section implements RCW 49.60.180, 49.60.190 and 49.60.200, which declare that discrimination because of marital status or sex is an unfair practice of employers, labor unions, and employment agencies, respectively.
>
> (2) *General Rule and Exception.* In general, discrimination against an employee or applicant for employment because of (a) what a person's marital status is; (b) who his or her spouse is; or (c) what the spouse does, is an unfair practice because the action is based on the person's marital status. It may also be an unfair practice because of sex, where it burdens women much more than men, or men much more than women. However, there are certain circumstances where business necessity may justify action on the basis of what the spouse does, and where this is so the action will be considered to come within the bona fide occupational qualification exception to the general rule of nondiscrimination. "Business necessity" for purposes of this section includes those circumstances where an employer's actions are based upon a compelling and essential need to avoid business-related conflicts of interest, or to avoid the reality or appearance of improper influence or favor.

*Washington Water Power Co. v. Human Rights Comm'n*, 91 Wn.2d 62, 64-65, 586 P.2d 1149 (1978) (quoting WAC 162-16-150).

The regulation currently in effect that governs marital discrimination is WAC 162-16-250:

> **Discrimination because of marital status.**
>
> (1) **General rule.** It is an unfair practice to discriminate against an employee or job applicant because of marital status. Examples of unfair practices include, but are not limited to:
>
> (a) Refusing to hire a single or divorced applicant because of a presumption that "married persons are more stable."
>
> (b) Refusing to promote a married employee because of a presumption that he or she "will be less willing to work late and travel."
>
> (2) **Exceptions to the rule.** There are narrow exceptions to the rule that an

DEFENDANT'S TRIAL BRIEF - 11  
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**  
701 5th Avenue, Suite 2100  
Seattle, WA 98104  
Telephone: (206) 695-5100  
Facsimile: (206) 689-2822

employer, employment agency, labor union, or other person may not discriminate on the basis of marital status:

(a) If a bona fide occupational qualification applies . . . ;

(b) If an employer is enforcing a documented conflict of interest policy limiting employment opportunities on the basis of marital status:

(i) Where one spouse would have the authority or practical power to supervise, appoint, remove, or discipline the other;

(ii) Where one spouse would be responsible for auditing the work of the other;

(iii) Where other circumstances exist which would place the spouses in a situation of actual or reasonably foreseeable conflict between the employer's interest and their own; or

(iv) Where, in order to avoid the reality or appearance of improper influence or favor, or to protect its confidentiality, the employer must limit the employment of close relatives of policy level officers of customers, competitors, regulatory agencies, or others with whom the employer deals.

WAC 162-16-250 (effective August 12, 1999).

Any analysis presented by Plaintiff related to WAC 162-16-150 is inapposite here and must be disregarded. Plaintiff must meet the burden as set forth under WAC 162-16-250. *See Kastanis v. Educ. Employees Credit Union,* 859 P.2d 26, 32 (Wash. 1993).

Here, evidence will be presented to establish that the Code meets the requirements of WAC 162-16-250. Pursuant to the Code, employees have a responsibility to avoid the appearance of engaging in conflicts of interest, including those that could arise should two co-workers engage in a romantic relationship. The Code specifically does NOT prohibit romantic relationships in the workplace, but notes that such relationships could cause conflicts of interest which would be prohibited. It then encourages employees to bring any potential conflicts, including romantic relationships, to the attention of management so that they could be evaluated.

GP will present evidence that Johnson believed there were a number of issues that would lead Plaintiff to have a conflict of interest as a Plant Controller. Evidence will be presented that

DEFENDANT'S TRIAL BRIEF - 12
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile:   (206) 689-2822

identifies concerns raised by the controllers including that Plaintiff's access to confidential and proprietary financial data posed a risk because of the possibility that this information would be shared with the hourly, union employee. GP will present evidence that this concern was not out of line because Plaintiff's husband admitted that they were more relaxed about what they shared with each other in the context of their relationship. This risk would apply where the controller dated any hourly employee, but the risk was particularly acute here where the hourly employee was also heavily involved with the union. Moreover, GP determined that Plaintiff had some roles - approving payroll as one example - that she could not perform while dating an hourly employee. These conflicts of interest run directly counter to GP's legitimate policy, and as such, it is not marital discrimination under Washington State law.

> D. *GP Had Legitimate Reasons for Concluding No Mitigation Resulting in Presenting Plaintiff with Three Options*.

Finally, Plaintiff cannot meet her burden because GP had legitimate reasons for finding that the conflict of interest could not be mitigated which resulted in the adverse action of presenting Plaintiff with the three options she had to select from. Once GP determined that Plaintiff would have multiple conflicts of interest if she were to date an hourly employee and union steward, it tried to create a plan that would mitigate those conflicts of interest. These efforts were unavailing. For example, one plan would require that Plaintiff's supervisor take over a number of her duties, and perform them himself. However, this would require too much time from her supervisor, who had his own duties to perform. Likewise, the only method to mitigate the risk that she would accidentally reveal information, would be to restrict the information available to her. This would reduce her effectiveness as a Plant Controller and essentially eliminate her role.

Plaintiff argues that these risks could have been mitigated through the use of an enhanced confidentiality agreement or segregation of duties agreement, but this fails to fully recognize the

DEFENDANT'S TRIAL BRIEF - 13
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

risk. As a Plant Controller, Plaintiff already had an obligation to maintain the confidentiality of information under her control. The risk was that Plaintiff would accidentally reveal information to the hourly employee and union steward. As Dennis has admitted, when he and Plaintiff began dating, they became more comfortable with each other, which could easily have led to the accidental release of confidential information. In addition, Plaintiff made a habit of working from home, but she had no private or securable space in the home she shared with the hourly employee and union steward. Therefore, Dennis would have had access to any information that Plaintiff brought home for work.

Lastly, it is not improper or a violation of the WLAD if GP does not follow Plaintiff's suggestions for mitigation of the conflict. The question is not whether the Defendant's determination was correct, or if the reasons provided were false. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). Instead, the jury must only consider whether the "employer honestly believed its reason for its actions, even if its reason is 'foolish, trivial or even baseless.'" *Id.* (quoting *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir 2001). GP has offered a number of reasonable concerns. GP will establish that the controller group did not believe unmitigated conflicts existed which established the reasons for its actions, and as such, its proffered reasons must be given effect.

> E. *Evanger Cannot Establish Gender Discrimination Based on Her Husband Not Being Terminated.*

Under the WLAD, "[i]t is an unfair practice for an employer . . . to discriminate against any person in compensation or in other terms or conditions of employment because of. . . sex." RCW 49.60.180(3). To establish a *prima facie* case of discrimination due to disparate treatment under the WLAD, Plaintiff must show that: "(1) [s]he belongs to a protected class, (2) [s]he was treated less favorably in the terms or conditions of [her] employment (3) than a similarly situated, non-protected employee, and (4) [s]he and the non-protected 'comparator' were doing

DEFENDANT'S TRIAL BRIEF - 14
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile:  (206) 689-2822

substantially the same work." *See Johnson v. Dept. of Social & Health Servs.*, 80 Wash. App. 212, 227, 907 P.2d 1223 (1996).

Plaintiff's Complaint alleges that "[a]lthough Plaintiff, a female and Mr. Evanger, a male, are partners in their marriage, Defendant chose to fire the female." Complaint, ¶ 11. The folly of this argument is based on one fact, that Plaintiff and her husband were of different genders. The argument advanced here, could have been applied just as easily if it had been Dennis that was terminated. Moreover, there is simply no evidence Plaintiff can point to in support of this allegation. First, Shanna Evanger was provided three options, and if she declined the first two options, then as a default the third option was the one selected. Evanger rejected the two options so she selected voluntary termination. This outcome could have been avoided should Evanger have selected one of the other two options. This was her choice, and a decision she made after having four days to consider the options and speak with her attorney. Second, Evanger cannot point to any document, policy, or procedure which states that where there is a marital conflict the female employee should be the one terminated, or otherwise removed from the position or facility. Third, Evanger cannot point to any other Plant Controller as a comparator who was considering entering into, in a relationship, or was married to an hourly, non-management employee. As such, she cannot establish her *prima facie* case of gender discrimination.

Furthermore, Dennis Evanger was a union steward and an active union member. As a union employee he could not be terminated except for "just cause." The CBA did not have terms to address this unique circumstance but it was clear from legal and the labor departments that Georgia Pacific would be setting itself up for a grievance if Dennis was terminated without going through the progressive discipline as set forth in the CBA. Finally, Dennis never submitted his resignation so his wife could keep her position. Accordingly, Evanger's termination was not related to her gender and she was not treated differently regarding her employment terms,

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

because she was a female.

    *F.    Evanger Cannot Establish Gender Discrimination Based On Her Replacement.*

Evanger will apparently try to assert that the fact that GP hired a man to fill her position, and that he earned a higher salary than her was proof of discrimination. However, this allegation was never included in her Complaint, and she never sought to amend the Complaint to include such an allegation. As such, she should be prohibited from making such an argument after laying in wait throughout discovery.[3]

However, even if she is allowed to present such an argument, it will be unavailing. The higher salary was more than justified by her replacement's much better qualifications and experience. The evidence will establish that Plaintiff had close to three years of experience as a Controller, all with Defendant. Her replacement, on the other hand, had 15 years of experience as a Controller at a number of different companies. Plaintiff was early on in her Controller career compared to her replacement. Plaintiff also had no higher degree than her accounting degree compared to the replacement who had a MBA from Notre Dame Business School, and is a licensed Certified Public Accountant. Based on these differences, the jury can conclude that the salaries paid to Plaintiff and her replacement reflect differences in skills, education, and training, and not gender. As such, Evanger will not be able to establish gender discrimination based on her replacement's salary.

    *G.    Evanger Is No Longer Pursuing A Retaliation Claim.*

Plaintiff has represented to GP that she is no longer pursuing a retaliation claim. Neither party will be presenting evidence related to retaliation.

---

[3] GP has filed a motion in limine requesting that Plaintiff be precluded from asserting this specific gender discrimination claim.

DEFENDANT'S TRIAL BRIEF - 16
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile:  (206) 689-2822

## IV.   CONCLUSION

Based on the evidence that will be presented by GP showing that Plaintiff cannot meet her burden in establishing a marital or gender discrimination claim, and that as a matter of law, Plaintiff fails to establish a *prima facie* case for marital or gender discrimination, the Court and/or jury should issue a defense verdict on all claims.

Dated: August 13, 2019.

GORDON REES SCULLY MANSUKHANI, LLP

By:   */s/ Sarah N. Turner*
Sarah N. Turner, WSBA #37748
Derek A. Bishop, WSBA #39363
701 5th Avenue, Suite 2100
Seattle, Washington  98104
Email:  sturner@gordonrees.com
Email:  dbishop@gordonrees.com

Chad A. Shultz
Admitted *pro hac vice*
GORDON REES SCULLY MANSUKHANI, LLP
55 Ivan Allen Jr. Boulevard Northwest
Suite 750
Atlanta, Georgia 30308
Tel.: 404.978.7325
E-mail: cshultz@grsm.com

Attorneys for Defendant
Georgia-Pacific Gypsum, LLC

DEFENDANT'S TRIAL BRIEF - 17
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile:  (206) 689-2822

# CERTIFICATE OF FILING AND SERVICE

The undersigned declares under penalty of perjury under the laws of the State of Washington that on this day the foregoing document was filed using the Court's E Filing system, which will serve a copy on all counsel of record.

Dated: August 13, 2019.

*/s/ Karen A. Hansen*
Karen A. Hansen, Legal Assistant
kahansen@grsm.com

DEFENDANT'S TRIAL BRIEF - 18
Civil Action No. 3:17-cv-05521-RBL

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile:   (206) 689-2822

1141971/46728445v1